UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HOME DESIGN SERVICES, INC.,

     Plaintiff,

v.                                    CASE NO. 4:08-cv-355-MCR/CAS

TURNER HERITAGE HOMES, INC.,
ET AL.,

     Defendants.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY FOR A NEW TRIAL

Plaintiff, Home Design Services, Inc. ("HDS"), hereby responds to Defendants' Motion for Judgment as a Matter of Law or Alternatively for a New Trial.[1] Dkt. 429.

## I.   Introduction

After a week-long trial, the jury in this case returned a verdict in favor of the Plaintiff, specifically finding that the Defendants had infringed upon the Plaintiff's original architectural design known as the HDS-2089 by copying that house plan and constructing 165 unauthorized houses from their slightly modified copies, which they named the Laurent and Dakota plans. Dkt. 414, Verdict Questions 1, 2, 6, 7, 8. The jury answered specific questions on the verdict form that found the HDS-2089 was Plaintiff's original creation, which had at least the minimal degree of creativity that entitled the plan to copyright protection. Dkt. 414, Verdict Questions 1 and 2. The jury also found that Plaintiff met its burden to prove that the plans had been copied, finding access and substantial similarity between the plans. Dkt. 414, Verdict Questions 6, 7 and 8. In finding

---

[1] Defendants have not advanced any argument as to why a new trial would be warranted for any issue. As such, that portion of the motion should be denied outright.

substantial similarity, the jury indicated that it had considered each house built and specifically listed the 165 houses found to be infringements. *Id.*

There was extensive evidence presented at the trial regarding all portions of Plaintiff's claim. Mr. Zirkel and other witnesses testified that the HDS-2089 was an independent creation, not based upon any other work. TT 139, ln. 19-22; 132, ln. 1-8; 138, ln. 19-25; 283, ln. 9-18; 287, ln. 22-23. Mr. Zirkel and Plaintiff's expert, Professor Kevin Alter, testified in depth regarding proof of copying and the similarities between the HDS-2089 and the infringing plans. *See,* TT 146-155; 360-362; 387-415; TT 392-409. Defendants' expert was also cross-examined regarding the similarity between the plans and the fact that his perceived "differences" between the plans were not present on multiple construction sets of the infringing plans.

It is important to note that the jury specifically found that the Defendants' claim of independent creation was false. Dkt. 414, Verdict Questions 9 and 10. Defendants have not challenged this finding. At trial, Defendants could not provide specifics regarding the creation of their infringing plans. And, their story of "independent creation" was ripe with inconsistencies and omissions. In any event, Plaintiff presented proof that Defendants' claimed "creation" took place after the principal of the Turner Heritage Homes, Inc., Doug Turner purchased a plan book directly from HDS. The fact is that Mr. Turner, and the other Defendants through him, had received HDS publications and mailings on multiple occasions, showing repeated access to the HDS-2089. Defendants have also not disputed that there was extensive evidence of access.

Faced with a jury that found infringement after listening to a week of testimony, much of which was comparing the plans, Defendants now argue that this Court should take the extraordinary measure of supplanting its own judgment for the jury's and entering judgment in favor of the

Defendants pursuant to Rule 50. The Defendants contend that there was no evidence upon which a reasonable juror could find the infringing plans at issue were substantially similar to the HDS-2089 or that the HDS-2089 was entitled to copyright protection at all. Defendants would have this Court simply ignore all the evidence presented by the Plaintiff at trial and limit this Court's consideration to a summation of their own paid expert's report. This argument ignores the bulk of evidence presented at the trial. The motion does not come close to meeting the standard imposed by Rule 50.

First, Defendants' motion argues that the plans - as selectively interpreted by their expert - were too different for a jury to find substantial similarity. The "legal standard" proposed by the Defendants would be a departure from established law. Defendants would change the way that the plans are to be compared as a whole. Instead, Defendants attempt to rely only on a list of minute differences in seeking judgment and ignore the totality of the plans and all the similarities. The short list of minute differences listed by the Defendants (like a closet door being a pocket door as opposed to a swinging door) are not so extreme that a reasonable finder of fact could not rationally find substantial similarity between the plans.

As explained by multiple witnesses at trial, the infringing plans at issue are practically line-for-line copies of the HDS-2089. The infringing plans directly track almost every line and feature of the copyrighted plan. Faced with the overwhelming number and character of these similarities, it is not possible to conclude that no reasonable jury could find the plans substantially similar. Indeed, the opposite is true. In this case, after a week of testimony and instruction from this Court, a reasonable jury did find that the plans at issue are substantially similar. Defendants' argument was rejected by this Court at the summary judgment stage of these proceedings and it should be rejected now.

3

Defendants' arguments are simply an attempt to avoid facing this case on its merits. At trial, the trier of fact (the jury) was in the best position to make determinations regarding the importance of any minute differences between the plans. The jury was aided by testimony from the creator of the HDS-2089 and was given the opportunity to hear from the Defendants' representative Douglas Turner. The jury had the benefit of architectural experts presented by both sides. Contrary to Defendants' argument, the comparisons/differences presented by their expert were not uncontradicted. Cross-examination properly undermined those claims made by the Defendants' expert. Indeed, as Professor Alter testified, the minor alterations of the plan in this case tend to prove copying, not disprove it. The very differences relied upon by the Defendants in their motion, are not present on the first versions of the Laurent plan used by the Defendants. The changes themselves and the earlier versions of the plan provide substantial, direct evidence of copying. At trial, the jury was able to address the credibility of witnesses and properly assign weight to the testimony given. The plans as a whole are overwhelming similar and the Defendants' motion should be denied in its entirety. A reasonable jury could very well find copying on the record before it. A reasonable jury did.

Defendants next ask this Court to disregard the jury's finding of liability by arguing that the HDS-2089 plan was not unique enough to entitle it to copyright protection in the first place. As explained below, Defendants' argument misstates the law governing copyrights. Defendants would change the law and impose a new condition that any creation be totally "unique" in concept to the world in order for the work to qualify for copyright protection. This is incorrect. The work need only be an original creation of its author (not copied from another source) with the minimal degree of creativity to be granted copyright protection. At trial, there was evidence presented that HDS

created the entire house design on its own, without copying or referencing preexisting works. TT 139, ln. 19-22; 132, ln. 1-8; 138, ln. 19-25; 283, ln. 9-18; 287, ln. 22-23. Defendants argue that they presented evidence in an attempt to undercut this testimony, pointing to another HDS plan and other general features offered by other plans in the marketplace prior to the completion of the HDS-2089. As is even acknowledged in Plaintiff's motion, Plaintiff's witness denied that the HDS-2089 was copied at all from these other works. TT 139, ln. 19-22; 132, ln. 1-8; 138, ln. 19-25; 283, ln. 9-18; 287, ln. 22-23. And, there was extensive testimony that the plans referenced by defense counsel actually varied widely and in significant manner from the HDS-2089. The record does not demonstrate the legitimate basis for a Rule 50 motion. The bottom line is that Plaintiff presented evidence that the HDS-2089 was an originally created house design, not copied from any other source, entitling it to copyright protection.

Lastly, Defendants incorrectly argue that there was no basis upon which the jury could rationally find Fred Turner liable for participating in the infringement or for contributing to the infringing conduct of the other Defendants. This ignores the testimony at trial. It was acknowledged at trial that Fred Turner was involved in supervising and approving what the defendant companies built and sold. TT 370:20-376:12; 376:13-16; TT 377:9-11. The companies built and sold 165 infringing houses. It was undisputed that Fred Turner personally participated in the infringement and there was ample evidence upon which the jury could find or infer that he knew of the infringement and contributed to it.

Defendants' Rule 50 motion is without merit. These arguments were rejected by the Court at summary judgment when it determined that a trial was warranted on Plaintiff's claim. A jury has now had the opportunity to consider all of the evidence presented by both sides, including a detailed

comparison of plans at issue. The jury has acted reasonably in finding in favor of the Plaintiff. The Defendants' motion should be denied.

## II.     Judgment Notwithstanding the Verdict Standard Generally

Fed. R. Civ. P. 50(b) permits a party to move for judgment as a matter of law after the jury has returned a verdict. *Johnson v. Guerrieri Mgmt., Inc.*, 437 Fed. App'x 853, 857 (11th Cir. 2011). In considering a Rule 50 motion, the court must determine whether there is a complete absence of record evidence that would support a finding for the nonmoving party. *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007). The court must consider all of the evidence in a light most favorable to the nonmoving party without re-weighing the evidence or evaluating witnesses' credibility. *Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467 (11th Cir. 1992); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1114 (11th Cir. 2005)(A motion for judgment as a matter of law will be denied if there is any rational basis upon which an impartial jury might reach different conclusions). As explained below, Defendants cannot demonstrate that this standard has been met. Their motion should be denied.

## III.    A Reasonable Finder of Fact Could Easily Make a Finding of Liability in this Case.

To prevail on its claim, HDS must show two elements: "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service*, 499 U.S. 340, 361 (1991). In copyright infringement cases, the element of "copying" can be proven by either direct or indirect evidence. *Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986). Courts allow "copying" to be proven indirectly because direct evidence is often impossible to find as an infringer does not often leave behind direct evidence of its crime. *Original Appalachian Artworks, Inc. v. Toy*

6

*Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982).  A plaintiff can prove copying indirectly by showing 1) that the infringer had access to the copyrighted work and, 2) that the alleged infringing work is "substantially similar" to the copyrighted one. *Id.*

As explained below, there was ample evidence upon which the jury could make a finding of liability in this case.  Defendants arguments are legally incorrect and they ignore the evidence introduced at trial.

IV.   **A Reasonable Trier of Fact Could Find That Defendants' Plans Are Substantially Similar to Home Design's Plan.**

A.   **Where a Plaintiff Relies upon Indirect Evidence to Prove Copying, the Substantial Similarity Analysis Focuses on a Comparison of the Works as a Whole.  A Defendant May Not Escape the Consequences of its Theft by Making Minor Changes to the Copyrighted Work.**

Defendants have taken positions in this case that significantly deviate from how the element of copying may be proven.  Defendants' argument would change the way in which these works are to be compared for a determination of substantial similarity.

In the indirect test for copying, the analysis of "substantial similarity" is an overall comparison of two works.  The accused work is compared to the copyrighted work and, if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work", the test for "substantial similarity" is met. *Original Appalachian,* 684 F.2d at 829.  In architectural works, the protection of the work lies with the protected arrangement and coordination of spaces, elements, and building components, as well as the total selection and arrangement of those items. *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.,* 554 F.3d 914, 920 (11th Cir. 2008).  The totality of the selection and arrangement of spaces, elements and components must be compared when making a determination of substantial similarity. *See,*

*Intervest,* 554 F.3d at 920-21.

**B.    The Substantial Similarity Analysis Used to Prove Copying Circumstantially Does Not Require Exact Duplication. The Standard Accepts and Contemplates That There Will Be Changes Made by the Infringer to Hide the Infringement.**

Courts have been very careful to point out that exact reproduction or near identity is not necessary and that, in this context, the basic test for "substantial similarity" is one of similarity and *not* one of differences. *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 618 (7th Cir.), *cert. denied,* 1568 459 U.S. 880, 103 S.C. 176, 74 L.Ed.2d 145 (1982); *Comptone Co. v. Rayex Corp.*, 251 F.2d 487, 488 (2d Cir. 1958). As Judge Learned Hand put it, there is substantial similarity where "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). In this general determination as to whether copying has occurred, it is the presence of similarities which determines whether infringement exists and the differences between works are not to negate infringement unless they so outweigh the similarities that the similarities can only be deemed inconsequential within the total context of the copyrighted work. *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1567-68 (M.D. Fla. 1995). The "substantial similarity" analysis does not turn on isolated similarities or dissimilarities in the two works, but rather on the "total concept and feel" of the works as they would be perceived by an audience of reasonable laypersons. *Sid & Marty Krofft Television Productions, Inc. v. McDonalds Corp.*, 562 F.2d 1157, 1166-1177 (9th Cir. 1977); *Buc International Corporation v. International Yacht Council Limited*, 489 F.3d 1129, 1146 (11th Cir. 2007).

**C.    Judgment Short of Trial or Contrary to a Jury Verdict in Copyright Cases Is Not Normally Awarded since the Comparison of Works Is Inherently Subjective and a Question of Fact.**

Trial is normally necessary in copyright cases due to the inherent subjectivity of comparing works. *Hoehling v. University City Studios, Inc.*, 618 F.2d 972, 977 (2nd Cir. 1980), *cert. denied*, 449 U.S. 841 (1980).   This is because the proof in copyright cases is fact-intensive and highly circumstantial, often involving detailed factual comparison between works.  Thus, similarity between plans in architectural infringement actions is normally a factual determination that must be made by the trier of fact.  *Arthur Rutenberg Homes, Inc. v Berger*, 910 F. Supp. 603 (M.D.Fla. 1995).  All due deference should be given to that trier of fact.

The substantial similarity standard - **which has always been viewed as involving a question of fact rather than law** - is, by Eleventh Circuit *en banc* precedent, the "default mode of analysis" even for "compilation copyright claims." *Buc Int'l Corp. v. Int'l Yacht Council Ltd.,* 489 F.3d 1129, 1149 (11th Cir. 2007) *citing BellSouth Advertising & Publishing Corp. v. Donnelley Info. Publishing,* 999 F.2d 1436 (11th Cir. 1993)(en banc).  Contrary to what Defendants would argue, the *Intervest* case, 554 F.3d at 914, has not changed this.

The existence of similarities and difference and the importance that those features have in the overall comparison of the plans is a highly detailed question of fact.  The jury was the fact finder in this case.  Contrary to what the Defendants may urge, Rule 50 does not provide this Court with a device to second-guess the jury or to substitute its own judgment as to what is important to the overall comparison of the plans for a finding of substantial similarity.   There is no case law that would sanction such a result.  There is no case law that would hold that a short list of differences between plans, no matter how contrived or insignificant, mandates a finding against substantial similarity.  The weighing of the evidence is to be left to the jury.  *Reeves v. Sanderson Plumbing*

*Prods., Inc.,* 530 U.S. 133, 150-51, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000)(credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge; a judge is not free to re-weigh evidence or re-evaluate the credibility of witnesses).

> **D.    A Reasonable Finder of Fact Could Easily Find Substantial Similarity Between the Plans in this Case.**

It strains credibility to suggest that a reasonable trier of fact could not conclude that HDS-2089 is substantially similar to the Laurent or Dakota plans.[2]  In examining these plans, a fact-finder could reasonably conclude that these plans are virtual duplicates.  Regardless of relatively minute differences in certain small floor plan details, the overwhelming majority of the plans trace line-for-line.

In an effort to sidestep the clear conclusion that the plans were copied, Defendants attempt to lead the court to error in asking it to disregard the scope of copyright protection that is afforded to the plan "as a whole."  *See, See, Home Design v. Hibiscus Homes of Florida, Inc.,* 2005 WL 3445522 *13 (M.D.Fla. 2005); *see also* 17 U.S.C. §101(a)(An architectural work is defined as "the design of a building as embodied in any tangible medium of expression...").  Pages 8 and 9 of the Defendants' Motion is spent claiming that the HDS-2089 is similar in some respects with other plans that may be available in the market place.  Defendants go on to argue that -based on these general similarities - the Court should "filter-out" Plaintiff's choices, arrangement, selection and coordination of the elements that comprise its plan and compare something less than the whole.

It is not clear what the Defendants would replace for comparison, however.  It seems that

---

[2]Plaintiff notes that Defendants repeatedly seem to claim that Plaintiff's copyright claim is limited to "the concept" evident in the HDS-2089 as a split floor plan.  Plaintiff's claim is not limited in this way and Plaintiff's claim is based on the whole of the copyrighted house plans, as indicated in the Amended Complaint.

Plaintiff's new, proposed method of "filtering out" the author's choices, would leave nothing for comparison and completely abrogate 17 U.S.C. §102(a)(8), which protects the entire design of a building as embodied in any tangible medium of expression. *See* 17 U.S.C. §101(a)(An architectural work is defined as "the design of a building as embodied in any tangible medium of expression...")

In this case, the plans at issue are practically identical. The only way a fact-finder could discount the overall similarity (and near identical nature of the plans) would be to disregard the plans as a whole and focus solely on what few minor changes were made to the HDS plan.

In comparing the plans, HDS's expert, Professor Kevin S. Alter from the School of Architecture at the University of Texas at Austin, opined that the plans at issue are overwhelming similar, that the infringing plans were derived from the HDS plan and that anyone looking at the plans would determine they were essentially the same house. TT 392, ln. 9-15; 391, ln. 9-16. For the Court to enter judgment contrary to the verdict, the Court must find as a matter of law that no reasonable person can find the plans substantially similar. To do so, the Court would have to completely discount Professor Alter's exhaustive comparison of the plans at issue and not only factually disagree with that witness's analysis of the plans, but also conclude that the analysis was completely unreasonable. The Court would also need to completely ignore Mr. Zirkel's extensive testimony regarding the similarity between the plans. This would involve a re-weighing of evidence that the Court may not engage in when deciding a Rule 50 motion.

The fact is that an average observer would not be able to even perceive most of the minute differences listed by Defendants in their motion for summary judgment. For example, whether a water closet door swings in or out does not change the entire nature of the plan to such a degree that no rational observer could find substantial similarity between the plans. Likewise, changing a sliding

glass door to a pair of swinging doors in the same location, does not radically alter the plan so that a rational finder of fact could not find substantial similarity.

As noted by Professor Alter, the plans themselves demonstrate overwhelming similarity. In comparing the Laurent plan to the HDS-2089, the following observations were made: The flow of the designs is the same. TT 392, ln. 9-16; 395, ln. 22-396, ln. 5. The organization of each room and the placement of each type of room is the same. TT 392, ln. 9-16; 396, ln. 6-8. The organization and traffic patterns between the rooms is the same. TT 392, ln. 9-16. The arrangement of the rooms and their elements is the same. TT 392, ln. 9-16; ln. 22-396, ln. 5. The overall proportions of the plan is the same. TT 392, ln. 9-16. The composition of architectural elements is the same. *Id.* The plans' public presence is the same. TT 398, ln. 8-18. The use of public and private spaces was the same in each plan. TT 398, ln. 19 - 399, ln. 11.

Were an average observer to compare houses built from the HDS-2089 with the Laurent plan, they would find a litany of identical features and very, very close similarities. TT 150-155. In entering the foyer, an observer will find that the entries of the Laurent and HDS-2089 are in the same location and are of the same size and proportion. *Id.* The foyers of the plans are equally grand. *Id.* Each room in the two plans has the exact same relationship to the other rooms. *Id.* The placement of the dining rooms, garage, living rooms, family room, breakfast nook, master bedroom, master bathroom, kitchen, laundry room, second bedroom, third bedroom, fourth bedroom, second bathroom, third bathroom and rear porch are identical in each plan. *Id.* The relationship between each room is identical, as are the proportion and use of space between those rooms. *Id.*

Importantly, Professor Alter explained how certain unique design similarities in the HDS-2089 and the infringing plans portray unusual design choices that indicate the Laurent plan was

12

copied from the HDS-2089.  TT 393, ln. 1-8;  400, ln. 16- 401, ln. 22; 402, ln. 3-22.  For example, the contours of the master bedroom of each plan are very unusual in layout, size and shape.  TT 402, ln. 3- 403, ln. 9.  The master bedroom of both plans traces the same strange outline where the breakfast nook contour creates an angled intrusion into front left corner of the master bedroom.  *Id.* This creates the same awkward condition for furniture placement in both the HDS-2089 and the Laurent plans.  *Id.*  The master bedroom windows in the plans compared by Professor Alter both indicated that they were specifically designed to accommodate a bed in a particular space.  TT 414, ln. 3 - ln. 18.

Likewise, the HDS-2089 and the Laurent design compared by Professor Alter had an uncommon feature where a partition wall went up to eight feet tall, stopping two feet short of the ceiling, separating the kitchen and family room.  TT 400, ln. 16- 401, ln. 22.  This was proof that the Laurent was copied from the HDS-2089.  TT 401, ln. 23 - 402, ln. 2.

Professor Alter further explained that the HDS-2089 and the infringing plans were both extremely efficient with space and were laid out to maximize the size of the rooms and the usefulness of the spaces, but the master bathroom in both plans oddly broke with that space efficiency and was exceedingly wide.  TT 405, ln. 4 - 406, ln. 7.  This was further proof that the infringing plans came from the HDS-2089.

The three sided contour of the breakfast nook is copied.  This results in an unusual mis-alignment of the breakfast nook's wall with the kitchen wall.  TT 394, ln. 11-23.  Further, Professor Alter testified that the thick wall (meant to accommodate plumbing) was still in the Laurent design like in the HDS plan, despite the fact that the faucet location in the Laurent plan master bathroom bathtub was flipped to the other side of the tub.  TT 409, ln. 16 - 410, ln. 19.  This was a further relic

13

showing that the plan was copied.

The plans themselves reveal a host of identical features and substantially similar designs. Almost every feature in the versions of the floor plans used for the infringing houses was taken directly from the HDS plan. The placement of doors, windows, access between rooms, and other features all are demonstrated from the plans.

Defendants cannot rely on a short list of minor changes made to the plan to hide their copying. They certainly have not changed the plan to the degree that no rational person could conclude the plans are substantially similar. To the contrary, Professor Alter testified in detail as to how certain changes, like the turning of the toilet area, showed proof of copying, since that change to the HDS would necessarily create the small linen closet space evident in the plans. TT 395, ln. 5-21. In other words, the small change demonstrated how the plan was copied. Professor Alter also testified that many of the "changes" argued by the Defendants were best classified as options that could easily be exchanged when building the subject house without affecting the overall near-identical nature of the plans as a whole. TT 396, ln. 12 - 398, ln. 7.

Even the list of minor differences submitted by the Defendants highlights why entry of judgment contrary to the jury verdict as to substantial similarity is unwarranted. For example, Defendants contented that a change in dimension of fourteen inches in the kitchen is significant, even though the plans remain nearly proportionally identical. Other minor dimensional changes in the other rooms do not change the nature of the plan, since the extension is done uniformly, maintaining the contours, proportions and relationship of each room. A reasonable jury could easily conclude that the close uniformity in the dimensions and proportions of every room is a fact that militates *toward* a finding of substantial similarity, rather than against a finding of substantial similarity.

14

These comparisons offer affirmative evidence of *similarity*.

In any event, the evidence introduced at trial does not support disregarding the jury's verdict. Defendants' motion should be denied.

### E.    Case Law

In an effort to avoid the determination made by the finder of fact, Defendants rely on multiple cases, claiming that courts in similar circumstances have not found substantial similarity between plans. *See, Lifetime Homes, Inc. V. Walker Homes, Inc.,* 485 F.Supp.3d 1314, 1323 (M.D.Fla. 2007);*Howard v. Sterchi,* 974 F.2d 1272 (11th Cir. 1992); *Intervest,* 554 F.3d 914; *Home Design v. Weekley,* 548 F.Supp.2d at 1311-12.  Defendants' Motion at 19-20.

Importantly, *Lifetime Homes* and *Howard* were not decided at summary judgment or following a Rule 50 motion, contrary to what a jury decided. *Lifetime Homes* and *Howard* were decisions by a federal district court, acting as the trier of fact at trial.  In fact, the *Lifetime Homes* court's refusal to grant summary judgment before trial undercuts the argument advanced by Defendants.  In that case at summary judgment, the Court was confronted with a list of over (50) fifty minor differences between the house plans at issue.  *See, Memorandum supporting Court's Order denying summary judgment on a lack of substantial similarity dated February 23, 2007 attached as Exhibit A for the Court's convenience; p. 12-14.*  The list of fifty differences in the *Lifetime Homes* case included items like that relied upon by the Defendants in this case.  *Id.*  The plans included differences in square footage, dimensions of rooms, placement of bathroom fixtures, number of entries into the kitchen and other items.  *Id.* ***Despite the lengthy list of minor differences submitted to the Court, the Court found that: "In this case the plans of the two designs are strikingly similar."*** *Id.* at 13.  Summary judgment was denied and the matter was left for a decision by the trier

of fact at trial.

These cases do not support the Defendants' request that this Court disregard the proof of the comparison of the plans and enter judgment contrary to the jury's findings. These are cases decided after trial, after the fact finder considered the totality of the evidence. These are not cases where judgment was entered based solely on a short list of differences, like the Defendants would argue. They are certainly not cases where a court disregarded a jury's finding of liability after trial.

The *Intervest* case presents one of the very select few situations where a court has concluded that summary judgment was appropriate in the home design context. Significantly, unlike the plans in this case, one of the *Intervest* plans even had a second floor while the other did not. *Intervest*, 554 F.3d at 922, Appendix. Accordingly, the interior first floor of the allegedly infringing plan contained stairs where the original plan did not. *Id.* The placement of these stairs demonstrated a number of significant dissimilarities in the plans, including basic features like the shapes of rooms, the manner in which the various rooms were accessed and the interior features of a number of rooms. Likewise, the dimensions of the bedrooms, their closet configurations and the kitchen configurations were all different. *Id.* Unlike the plans at issue in this case, the entrances of the various rooms were varied in angles and location. *Id. at 917.* The same type and severity of differences are not present in this case to the degree a reasonable fact finder could not find substantial similarity between the plans, as an indirect method of proof. The Defendants' changes to the Plaintiff's plan are minor.

The *Weekley* case cited by the Defendants is also instructive. In that case, the court found that the plans were not substantially similar and awarded summary judgment. The Defendants' plans in that case differed from the copyrighted work substantially more than the plans in this case. *See Diagrams on p. 20 of Plaintiff's Motion.* The *Weekley* plans included different entrance placement

16

to each and every bedroom. *Id.* The pool bath in the copyrighted plan was tilted at an angle and configured differently than the pool bath kept at a right angles in the accused plan. *Id.* The master bathroom was configured completely differently, with a complete rearrangement of the interior bathroom features. *Id.* The closet placement in each and every bedroom was different, as was the interior layout of the kitchen. *Id.* Walls existed to change the flow of the plan, its traffic patterns and interior content. *Id.* The same type and severity of changes are not present in this case. To the contrary in this case, as discussed above, almost every feature and space reflected in both the HDS-2089 and the infringing plans is almost identical. The plans can practically be traced.

It is also very telling in this case, that many of the changes listed by the Defendants in their motion, do not exist in the first versions of the infringing plans. "Version 1" of the Laurent plan does not reflect those changes made to extend the back bedroom #4, the master bedroom, or porch. The change in square footage and the differing dimensions are not reflected in Version 1 of the Laurent plan. Likewise, the change to the door in the master bath is not reflected in the first version of the Laurent. The linen closet change is not evident in the first version of the Laurent plan, nor is the arched change to the opening to the living room, dining room or family room. The difference in the wall separating the kitchen from the living room is also not evident in the first versions of the Laurent plan that were built. The french door/sliding door change to the family room is also not evident in the first versions of the Laurent plans.

On pages 13-15 of their motion, the Defendants attempt to argue that the jury could not rationally find infringement in all the plans because the Plaintiff did not have its witnesses go through the detail of each and every of the 165 house plans. But, these plans were in evidence and they were all Laurent and Dakota plans. The parties' Joint Exhibits 1 and 2 listed the homes and

17

listed the house design used at each location.  In addition to the joint exhibits and the testimony from

the witnesses, Plaintiff's Ex. 71, contained tabs with the house designs.  This was also in evidence.

The deposit copy of the HDS-2089 was submitted into evidence, as was the construction

drawings that HDS distributed when the plan was ordered.  PE 1 and PE 6.  Defendants argue that

the comparison presented to the jury was based on the construction set and is somehow invalid.  This

ignores the record.    The deposit copy of the HDS-2089 was in evidence and the jury could make

the comparison when determining the 165 houses were infringements.  Defendants had a full

opportunity to argue against the comparison and explain their position to the jury in closing.[3]  The

---

[3]Defendants position that comparison with the construction set of the HDS-2089 is barred is also legally incorrect.
Registration of a work is sufficient to provide protection for variations or derivatives that may come later.  An
infringer cannot copy a variation of the copyrighted work and escape liability.
       The right of reproduction, use and right to create derivative works all belong to the copyright holder to the
exclusion of others. *See*, 17 U.S.C. § 106.  Copyright law clearly states that derivative works are the exclusive
property of the copyright holder.  17 U.S.C.A. §§ 101, 106(2); *see also Stewart v. Abend*, 495 U.S. 207, 221 n.3
(1990); *Spinmaster, Ltd. v. Overbreak, LLC*, 404 F.Supp.2d 1097, 1106 (N.D. Ill. 2005); *eBay Inc. v.
MercExchange, LLC*, 126 S.Ct. 1837, 2006 (2006).
       Derivative works are protected by the original copyright registration when the owner of the original and the
derivative works are the same. *Montgomery v. Noga*, 168 F.3d 1282, 1292-93 (11th Cir. 1999) (affirming district
court's ruling that the scope of copyright owner's registered original work extends to protect its derivative); *Gamma
Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1111-1112 (1st Cir. 1993); *Russell v. Price*, 612 F.2d 1123, 1128-
29 (9th Cir. 1979); *Lamb v. Starks*, 949 F.Supp. 753, 755-56 (N.D. Cal. 1996); *Cordon Art B.V. v. Walker*, 1996 WL
672969, at 5 (S.D. Cal. 1996); *Xu Liu v. Price Waterhouse, LLP*, 182 F.Supp. 2d 666, 675 (N.D. Ill. 2001); 2
*Nimmer on Copyrights* § 7.16[B][2], 7-165 (Perm.Ed. 2000); *see also Central Point Software, Inc. v. Nugent*, 903
F.Supp. 1057, 1060 (E.D.Tex. 1995) (granting summary judgment to plaintiffs on their copyright infringement claim
where the plaintiffs registered their copyrights in certain versions of computer programs and defendants copied
subsequent versions that were derived from the registered works); *Lamb v. Starks*, 949 F.Supp. 753, 755-56
(N.D.Cal. 1996) (holding that a prima facie case of copyright infringement had been established where the defendant
copied plaintiff's unregistered trailer that contained portions of a movie in which the plaintiff held a registered
copyright); *Fred Riley Home Bldg. Corp. v. Cosgrove*, 883 F.Supp. 1478, 1482 (D. Kan. 1995) ("Creation of a
derivative work requires consent by the owner of the original copyright."); *Gracen v. Bradford Exchange*, 698 F.2d
300 (7th Cir. 1983) (lack of authorization by the copyright holder to produce a derivative work constitutes
infringement); *Pickett v. Prince*, 207 F.3d 402, 406 (7th Cir. 2000); 2 *Nimmer* § 7.16[B][2] (concluding that the
owner of a registered underlying work that is part of an unregistered derivative work should be able to maintain a
copyright infringement suit against a defendant who reproduces the derivative work, and thus the underlying work
contained therein, without authorization); Douglas Y'Barbo, *On Section 411 of the Copyright Code and Determining
the Proper Scope of a Copyright Registration*, 34 San Diego L.Rev. 343, 351-52, 354 n. 38, 356 (1997) (same);
*Value Group, Inc. v. Mendham Lake Estates, LP*, 800 F.Supp. 1228, 1230-32 (D.N.J. 1992)(where infringer copied
from photocopy of a sales brochure that advertised a depiction of architectural plans, the infringer could not escape
liability by claiming to have copied from a derivative work; injunction was granted since the copyright holder has the
exclusive rights to prepare derivative works); *Fred Riley Home Bldg. Corp. v. Cosgrove*, 864 F.Supp. 1034, 1037-39
(D.Kan. 1994)(builder could not claim right to 'derivative' design that it attempted to copyright after using an

18

jury made the comparison of each of the plans.  Again, on the verdict form, the jury specifically listed the houses determined to be infringements, both Laurents and Dakotas.[4] Dkt. 414.  In answers to separate questions, the jury listed the Dakota and the Laurant house numbers found to be infringements, meaning - contrary to Defendants' speculation - the jury made individual comparisons of the plans and even identified them by their different plan name.  *Id.*

No prior court has ever done what the Defendants are asking this Court to do through its Rule 50 motion.  The floor plans at issue here are too close in almost every detail to determine - as a matter of law - that no reasonable jury could find substantial similarity between the plans.  The plans at issue here, like those in the *Lifetime Homes* case cited by the Defendants are too close, to determine they are not substantially similar as a matter of law, despite the Defendants' manufactured list of small differences.  The overwhelming number of similarities, compared with those minor differences asserted by the Defendants, demonstrates that a rational fact finder could find substantial

---

architect's design to build the first house; making adjustments to the architect's plan during construction and putting those adjustments into a written plan, did not make the 'adjusted' plan the property of the builder; instead the adjusted plans were derivatives that belonged to the architect through the first copyright).

A copyright holder may proceed against the infringer based on the registration of the original work even if the infringer copied from a derivative work of the registered work.  *Montgomery v. Noga*, 168 F.3d 1282, 1292 (11th Cir. 1999)(infringement suit allowed where infringer had copied copyright holder's unregistered, derivative software program that incorporated substantial portions of the registered, copyrighted software program from which the derivative derived); *Mattel, Inc. v. Robarb's, Inc.*, 139 F. Supp. 2d 487 (S.D. N.Y. 2001)(infringers copied copyrighted flame design from a different design that was unregistered, but - because Defendant copied the flame design as from a derivative prepared by the owner of the original design that was registered, it did not matter that defendant copied it from a derivative unregistered work that incorporated the design); *See also, Montgomery v. Noga*, 168 F.3d at 1293 (11th Cir. 1999), citing 2 *Nimmer* § 7.16[B][2] (concluding that the owner of a registered underlying work that is part of an unregistered derivative work should be able to maintain a copyright infringement suit against a defendant who reproduces the derivative work—*and thus the underlying work contained therein—*without authorization).

Registration of a work is sufficient to provide protection for variations or derivatives that may come later.  An infringer cannot copy a variation of the copyrighted work and escape liability.

[4]It should be noted that there was testimony that the Dakota was a Laurent plan, with a split closet off of the master bedroom and there was testimony that the comparison of the Laurent and the HDS-2089 held true for the Dakota plan.  TT 146, ln 24- 147, ln. 8; *see also* Dakota plans in evidence via PX 71.  Defense counsel even characterized the Dakota as a Laurent with a few changes.  TT 101, ln. 8-9.

similarity between the plans.  The Court should deny the Defendants' motion.  The merits of this case were determined by the jury who was in a position to weigh the evidence before it, including the significance of the asserted differences, the proof of copying, and the credibility of the witnesses.

## V.   There Was Sufficient Record Evidence That the HDS-2089 Was an Original Creation Entitled to Copyright Protection.

On the verdict form, the jury specifically found the HDS-2089 was Plaintiff's original creation, which had at least the minimal degree of creativity that entitled the plan to copyright protection.  Dkt. 414, Verdict Questions 1 and 2.

Defendants incorrectly argue that similarities between the HDS-2089 and other plans that were offered by the Plaintiff or other designers at the time that the HDS-2089 was created should rob the plan of copyright protection because the HDS plan would then not be "unique" enough for copyright protection.  Defendants' argument is directly contrary to Supreme Court precedent that holds a work need not be unique to be protected, only the original expression of its author.  *See*, *Feist Publication, Inc. v. Rural Telephone Service Co., Inc.,* 111 S.Ct. 1282, 1287-1288 (1991).

The present motion attempts to suggest that the HDS -2089 is not original because, once one removes or "filters out" what the Defendants perceive to be similarities between it and other plans, Plaintiff's plan cannot support a claim.  This new "filtering process" proposed by the Defendants does address the copyright protection given to the plan as a whole and it completely rewrites that law defining the concept of originality.  This is a completely incorrect statement of the law in regard to architectural works.

Concepts, ideas and features are the building blocks of architectural works, freely used by all creators to create what is protected, *the overall expression*.  An architectural work is

copyrightable *as a whole*. *See, Home Design v. Hibiscus Homes of Florida, Inc.*, 2005 WL 3445522

*13 (M.D.Fla. 2005)(noting that the Court would not grant summary judgment regarding originality

of the entire *plans* at issue because doing so would require a weighing of the evidence inappropriate

for the court to engage in).

The same non-copyrightable materials can be used by anyone to create a copyrightable whole.

Everyone should know this. Certainly, architects and builders do, as there has been no stifling of

creativity since the passage of the act.  Congress expressly intended this when it declared that

copyright protection subsists in the entire expression of architectural works even where they do

incorporate what would, by themselves, wholly be elements in the public domain or

noncopyrightable parts. *See* 17 U.S.C. §101(a)(An architectural work is defined as "the design of

a building as embodied in any tangible medium of expression...").  When it made this definition

change to 17 U.S.C. §101(a) in 1990, Congress pointed out that the term "design" was specifically

used to delineate what is protected in two components:

> "it states what is protected. Second, it specifies the material objects in which the
> architectural work may be embodied. The protected work is the design of a building.
> The term "design" includes the overall form as well as the arrangement and
> composition of spaces and elements in the design.  The phrase "arrangement and
> composition of spaces and elements" recognizes that: (1) creativity in architecture
> frequently takes the form of selection, coordination, or arrangement of unprotectible
> elements into an original protectible whole; (2) an architect may incorporate new,
> protectible design elements into otherwise standard, unprotectible building features"

> 136 Cong Rec. E259-01,E260.. *See, also, See* 1990 U.S.C.C.A.N. 6935, 6949 and
> 136 Cong. Rec. E259-01, E260.

The Defendants not only misrepresent that the design is not protected as a whole; they also

attempt to redraft the concept of originality.  The argument advanced by the defense relies upon an

incorrect definition of "original" under the copyright law.  In copyright, "original" does not mean

"unique." It means independently created. All that is necessary to prove originality is that the work has been independently created by its author. *Hubco Data Products Corp. v. Management Assistance, Inc.*, 219 U.S.P.Q. (BNA) 450 (D. Iowa 1983)("there is no requirement that the work be novel: The originality necessary to support a copyright merely calls for independent creation, not novelty. Thus, a work will not be denied copyright protection simply because it is similar to a work previously produced by others, and hence is not novel. Originality means only that the work owes its origin to the author, and is independently created, and not copied from other works. ***Therefore a work is original and may command copyright protection even if it is completely identical with a prior work provided it was not copied from such prior work but is rather a product of the independent efforts of the author.*** (Emphasis added)." *Id; see also Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775 (2d Cir. 1994). Originality means independent creation and does not mean uniqueness or novelty in the copyright context. *See, Feist Publication, Inc. v. Rural Telephone Service Co., Inc.,* 111 S.Ct. 1282, 1287-1288 (1991).

In their Motion, the Defendants claim that the existence of two other HDS plans which pre-date the creation of the HDS-2089 would indisputably prove that the work was derived from those plans. However, Defendants cannot point to any testimony that the plan was actually based on any of these preexisting works. Defendants acknowledge in their motion that there was testimony from HDS's representative wherein he denied that the HDS-2089 was derived from these plans. Defendants' argument also ignore the extensive testimony concerning the litany of differences contained between the other HDS works (or other plans in the marketplace) and the HDS-2089.

Contrary to what is asserted by the Defendants, there is no testimony that the HDS-2089 was based on any preexisting work. HDS's corporate representative, Mr. Zirkel testified that the HDS-

2089 was not based on the preexisting plans. TT 139, ln. 19-22; 132, ln. 1-8; 138, ln. 19-25; 283, ln. 9-18; 287, ln. 22-23. There was a reasonable basis upon which the jury could find that the HDS-2089 was an original work, not copied from any other plan.

Defendants' argument also ignores all of the testimony regarding the differences between the HDS-2089 and the different plans offered by the Defendants. Importantly, the differences between these plans go well beyond the minor changes that were made by the Defendants in this case to the HDS-2089 to arrive at their infringing Laurent and Dakota plans. HDS-2089. In regard to the two HDS plans (the "Timberwood" and the "HDS-2041") with which the Defendants compare with the HDS-2089, the plans differ in several respects. To name only a few, the HDS-2089, Timberwood and HDS-2041 plan differ in room placement, bathroom type and configuration, hallway space, and exterior contours. The plans apparently available from other builders are even more different, including those differences named above, along with differences in number of rooms, types of rooms, arrangements of closets, and arrangements of bathroom features. Defendants' claim that these varied and dissimilar plans are indisputable proof that the HDS-2089 was based on preexisting work, is not supported, let alone an indisputable issue of fact. In contrast, the HDS-2089 and the Defendants infringing Laurent and Dakota plans, almost exactly track, line-for line, in room placement, contours, window placement, and all minute details.[5]

---

[5]    Adding a secondary leap to their claim that the HDS-2089 was based on a preexisting work, the Defendants attempt to argue that the HDS-2089 could not have been registered as an architectural work because one or more of those invented pre-existing works was built once prior to the effective date of the AWCPA. In addition to asserting that the HDS-2089 was originally designed without reference to these preexisting works, Plaintiff disputes that the one-time construction of the other home plans referenced by Defendants would have any bearing on the HDS-2089's protection as an architectural work. While Plaintiff acknowledges the district court's decision in *Home Design v. Weekley*, there is ample authority to conclude that the singular "construction" of a building does not equate with the publication of an architectural design. *See, Robert R. Jones Assocs. v. Nino Homes*, 858 F.2d 274, 275 (6th Cir. 1988); *Imperial Homes Corp. v. Lamont*, 458 F.2d 895 (5th Cir. 1972); 37 C.F.R. § 202.11(c)(5). Regardless of this secondary leap, Defendants have not shown the absence of any disputed fact that the HDS-2089 was based on any preexisting plan. To the contrary, they have not shown that the HDS-2089 was anything but an original creation, as

The record does not demonstrate the legitimate basis for a Rule 50 motion.  The bottom line is that Plaintiff presented evidence that the HDS-2089 was an originally created house design, not copied from any other source, entitling it to copyright protection.  The existence of other plans in the market place with some similar features does not negate the originality of the plan or rob it of the protection afforded by copyright law.

## VI.   The Jury Could Reasonably Conclude That Fred Turner Participated in the Infringing Activity or Was Liable as a Contributory Infringer.

Lastly, Defendants incorrectly argue that there was no basis upon which the jury could rationally find Fred Turner liable for participating in the infringement or for contributing to the infringing conduct of the other Defendants.  Defendants' argument ignores the testimony at trial.

It was acknowledged at trial by Defendants' own witness that Fred Turner was an officer, member or owner of each of the corporate defendants, and that he received money from the corporate defendants when they were profitable.  TT 370:20-376:12; 376:13-16.  Doug Turner testified that Fred Turner was involved in supervising and approving what the defendant companies built and sold.  TT 377:9-11.  The jury determined that the companies built and sold 165 infringing houses.  In this way, it was undisputed that Fred Turner personally participated in the infringement.

There was likewise evidence that Fred Turner was liable for contributory infringement.  In order to prove that a defendant is liable for contributory infringement, a plaintiff must demonstrate that Defendants (1) had knowledge of infringing activity and (2) induced, caused, or materially contributed to the infringing conduct of another.  *Gershwin Publishing Corp. v Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  Constructive knowledge is sufficient to

---

the testimony cited above reflects.

satisfy the first part of the test. Thus, a plaintiff need only prove that the contributory infringer knew or had reason to know of the direct infringement. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001).

Here, the record is clear and uncontradicted that the Fred Turner was involved in supervising and approving what the defendant companies built and sold as houses. (TT 377:9-11). There was evidence that he oversaw the infringing activity. As the Court reasoned when deciding to give the instruction on joint liability, it would be a fair inference by the jury to determine that Fred Turner knew or had reason to know of the infringement. (TT 1249, ln. 7-21; TT 1255, ln 21-1256, ln. 20). There was a basis upon which the jury could find or infer knowledge. Fred Turner not only participated in the infringement directly, but he was also one of the persons standing to profit from the revenues received through the infringement of HDS's plan. He was a person who supervised and approved what the companies would build. Defendants' motion should be denied.

**Conclusion**

Accordingly, for the reasons explained above, Defendants' motion should be denied. Respectfully submitted this 19th day of May, 2014.

/s/Jon D. Parrish
Jon D. Parrish, Esquire
Florida Bar No. 984329
Kirt R. Posthuma, Esquire
Florida Bar No. 0036372
PARRISH & YARNELL, P.A.
3431 Pine Ridge Road, Suite 101
Naples, Florida 34109
Ph 239/566-2013; Fax 239/566-9561
Primary Email: ply@napleslaw.us
Secondary Email: karlaschooley@napleslaw.us
Secondary Email: kimdetrinis@napleslaw.us
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 19, 2014, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: Brian R. Gilchrist, Esq., [bgilchrist@addmg.com]  Jeffrey S. Boyles, Esq. [jboyles@addmg.com] and Ryan Thomas Santurri, Esq., [rsanturri@addmg.com] Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., 255 S Orange Ave, Suite 1401, Orlando, Florida 32802-3460.

/s/Jon D. Parrish, Esq.
Jon D. Parrish, Esq.
Florida Bar No. 984329
Kirt R. Posthuma, Esq.
Florida Bar No. 0036372
Parrish & Yarnell, P.A.
3431 Pine Ridge Road, Suite 101
Naples, Florida 34109
Ph 239/566-2013; Fax 239/566-9561
Primary Email: ply@napleslaw.us
Secondary Email: karlaschooley@napleslaw.us
Secondary Email: kimdetrinis@napleslaw.us
**Attorneys for Plaintiff**