# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

HOME DESIGN SERVICES, INC.

       Plaintiff,

    vs.                   **Case No: 4:08-cv-00355-MCR/CAS**

TURNER HERITAGE HOMES, INC.;
FREDERICK E. TURNER; DOUGLAS E.
TURNER; SUMMERBROOK HOMES, INC.;
GREENFIELD HOMES, INC.; EMERALD
HOMES, INC.; WAKULLA BUILDERS, INC.;
WAKULLA BUILDERS, LLC; CREEKSIDE
HOMES, INC.; TURNER HERITAGE
HOMES OF DESTIN, LLC; NORTHSIDE
HOMES, LLC; ASHTON BUILDERS, LLC;
FREEPORT BUILDERS, LLC; SOUTH
COUNTY HOMES, LLC; VISION COAST
HOMES, LLC; and EASTON BUILDERS,
INC.,

       Defendants.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL ON DAMAGES

Defendants hereby respond in opposition to Plaintiff's MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL ON DAMAGES (Plaintiff's Motion, Dkt. 428).

## I.    SUMMARY OF ARGUMENT

The evidence at trial was clear–the HDS-2089 is an industry standard, commonplace floor plan, lacking protectable elements of any value. While the Jury found infringement and awarded damages of more than seven times the amount Plaintiff charged production builders for use of the work, Plaintiff is unhappy with this windfall. Despite no evidence of profits causally connected to– or attributable to–copying whatever protectable elements of the HDS-2089 the Jury presumably

found to exist, Plaintiff improperly directs this Court to increase its damage award by millions of dollars. Contrary to Plaintiff's monoscopic presentation of the Jury's verdict and the evidence, there was substantial evidence to support the Jury's damages calculation.[1] Plaintiff's argument that certain distributions to the individual Defendants (Doug and Fred Turner) are profits attributable to infringement merely rehashes its unsuccessful arguments to the Jury. The evidence at trial supports a finding that the Defendants made no profits attributable to infringement. However, to the extent the Jury found any profits attributable to infringement, the Jury must have accounted for such profits when awarding actual damages–as the Copyright Act and the agreed jury instructions explicitly provide.

As an initial matter, Plaintiff failed to move at the close of evidence for judgment as a matter of law under Rule 50(a) for an award of profits, much less for the specific distributions sought now. Accordingly, Plaintiff's Motion is improper because the issue was not preserved. If the Court considers Plaintiff's Motion, it must still deny the request for increased damages unless it "finds that a reasonable jury would not have a legally sufficient evidentiary basis" to arrive at the damages awarded–a finding not possible on the ample trial record. *See* Rule 50, Federal Rules of Civil Procedure. Plaintiff's request for a partial new trial must also be denied because (i) Plaintiff fails to set forth any basis to reject the Jury's verdict where the damages awarded are consistent with the law and not against the great weight of the evidence, and (ii) because the issue of profits is so intertwined with liability in copyright cases that a partial trial on damages alone would not be possible and would deny the Defendants a fair trial.

Copyright law allows a copyright owner to recover his actual damages and any profits of the

---

[1] Defendants have sought judgment as a matter of law that the accused works could not infringe under Eleventh Circuit law, and that there was insufficient evidence to support a finding of liability as to Fred Turner; however, while Defendants disagree with the Jury's damages calculations, there is a legally sufficient evidentiary basis for the award assuming infringement.

infringer that are (i) attributable to the infringement and (ii) are not taken into account in computing actual damages. 17 U.S.C. § 504(b). Plaintiff was awarded damages of $127,500. The Jury then found no additional profits, attributable to infringement, that were not already accounted for. It is a mischaracterization of the Jury's verdict for Plaintiff to assume it was not awarded the Defendants' profits found by the Jury to be attributable to infringement, as the Jury may well have accounted for any such profits in its actual damage award pursuant to the agreed instructions it was given. Alternatively, the Jury may have found that Plaintiff failed to meet its burden of showing that any distributions were causally connected to the use of copyrightable material. Similarly, the Jury had a legally sufficient basis to find that the distributions were not attributable to any infringement, but the result of land development, market conditions, or some other factor supported by evidence. Indeed, Plaintiff's counsel invited the Jury to do just that in closing argument by reminding the Jury that Dr. Fishkind had deducted profits attributable to land value and directing them "**you have the discretion to do that**." Trial Transcript ("TT") 1372:3. Plaintiff cannot complain if the Jury exercised its discretion and credited the very evidence Plaintiff's counsel told them was adequate, though disputed. Plaintiff ignores these possibilities in favor of its preferred interpretation of the evidence and verdict. However, since there was a legally sufficient evidentiary basis for the Jury's damage award, Plaintiff's Motion must be denied. Likewise, it certainly cannot be said the Jury's determination of damages went against the great weight of the evidence. Plaintiff simply points to a figure on a spreadsheet and contends the Jury should have found the entire amount to be caused by, and wholly attributable to, the copying of protectable elements of the HDS-2089–despite significant evidence to the contrary.

## II.   LEGAL STANDARD

A district court may not grant relief under Rule 50 after verdict except on specific grounds upon which the movant relied in a pre-verdict Rule 50 motion. Federal Rule of Civil Procedure 50.

In considering a motion made pursuant to Rule 50(b), a jury verdict "must be left intact if there is evidence from which the decision maker . . . reasonably could have resolved the matter the way it did." *B & F Sys. v. Leblanc*, 2012 U.S. Dist. LEXIS 90504, 6-7 (M.D. Ga. June 29, 2012) (citing *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008)). A "court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995). A court will not second-guess the jury, or substitute its own judgment, if a jury's verdict is supported by sufficient evidence. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (reversing order granting judgment as a matter of law). In reviewing a verdict, there is a presumption under the law that a jury follows its instructions. *Gowski v. Peake*, 682 F.3d 1299, 1315 (11th Cir. 2012).

Under Federal Rule of Civil Procedure 59(a), a party may seek a new trial on the grounds "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great - not merely the greater - weight of the evidence.'" *Lipphardt*, 267 F.3d at 1186 (reversing order granting a new trial and reasoning that the evidence found credible by the jury was consistent with the law). A court may not grant a *partial* new trial "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Seb S.A. v. Sunbeam Corp.*, 148 Fed. Appx. 774, 796-797 (11th Cir. 2005) (quoting *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931) ("Here the question of damages on the counterclaim is so interwoven

with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.")).

## III.   COPYRIGHT DAMAGES

Copyright law allows a copyright owner to recover (i) "actual damages" and (ii) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages." 17 U.S.C. § 504(b).[2] The agreed instructions given to the Jury accurately reflect the available forms of recovery under the Copyright Act.

### THE RELEVANT JURY INSTRUCTIONS

Plaintiff is entitled to recover any actual damages suffered because of the infringement. "Actual damages" means the amount of money adequate to compensate Plaintiff for the injury to the market value of the copyrighted work caused by the infringement. In this case, Plaintiff claims that the injury to the market value of its copyrighted work is measured by: licensing revenue lost because of the infringement; profits on sales lost because of the infringement. . . .

In addition to actual damages, the copyright owner is entitled to any profits of the Defendant <u>attributable to the infringement</u>. You may not include in an award of profits <u>any amount that you took into account in determining actual damages</u>.

You may make an award of the Defendant's profits only if you find that the Plaintiff showed a causal relationship between the infringement and the profits generated indirectly from the Defendant's gross revenue. . . .

Unless you find that a portion of the profit from the use or sale of a product or work containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The Defendant has the burden of providing the portion or percentage of the profit, if any, attributable to factors other than the copyrighted work.

Jury Instructions, Dkt. 412, pp. 33-35 (emphasis added).

## IV.   THE TRIAL

Plaintiff brought this action for copyright infringement of an architectural work known as the HDS-2089 against Defendants, asserting that 165 homes built and sold by Defendants infringed the HDS-2089. During the week of March 3, 2014, the parties tried the

---

[2] The Copyright Act alternatively provides for an award of statutory damages in some cases, however, statutory damages are not available in this case because HDS did not register its copyright prior to the time Turner commenced the alleged infringement.

case to the Jury. Plaintiff's principal (and purported author of the asserted work) conceded he was not the first to develop split plans, and that at the time the HDS-2089 was allegedly created, the ubiquitous split plan comprised the majority of the market. TT 180:4-9; 281:6-15. Michael Sopoliga, the head designer for HDS in 1991, worked on drafting the HDS-2089 and described the plan as "pretty generic." TT 1173:14-22. Mr. Sopoliga went on to state that the HDS-2089 was not original, but a "variation on a theme at the time of a small, compact, regular -- rectangular house, very efficient, cost efficient. Builders were building them like crazy all over the place." TT 1174:21-25. Evidence further established that earlier plans by Plaintiff in the public domain, such as the Timberwood and the HDS-2041, have the same room locations and arrangement of elements. DX 28, DX 31; PX 3; TT 452:2-21, 457:7-16, 461:2-4, 463:2-22. The HDS-2089 is also very similar to several preexisting third party plans in the April 2, 1989 and March 10, 1990 Orlando Sentinel Parade of Homes. See e.g., DX 36-38. Defendants' expert, Robert Koch, presented extensive testimony regarding the commonplace, industry standard nature of the HDS-2089. TT 749:3-756:15, 760:13-761:18, 762:22-763:25, 766:16-767:20, and 778:3-7. The many differences between the HDS-2089 and the accused homes were also identified and explained in great detail by Mr. Koch, and his testimony was summarized by marking up the Turner Plans at DX 227 and DX 228. Ultimately, the Jury found infringement–though it is unclear what elements of the HDS-2089 were found to be original and copied.

Regarding issues of damages, the Jury heard extensive evidence that:

•The individual Defendants' primary duties for the corporate Defendants concerned land acquisitions. TT 599:6-21.

•The individual Defendants did not earn a profit from the accused homes. TT 1104:2-14.

•Shareholder distributions were made for tax purpose and reinvested in the companies as working capital, generally in the form of guarantees on credit lines secured by

certificates of deposit. TT 676:11-25; 716:4-717:3. The distributions used as guarantees were lost in the real estate decline. TT 677:1-7; 716:4-717:3.

•The corporate Defendants' net profit on the accused homes before distributions was only $1.4 Million. TT 1102:7-24.

•Defendants' net profits were wholly attributable to land value. TT 1103:5-1104:1.

•Defendants' land profits were determined by market conditions – not floor plan layout. TT 653:22-644:24.

•The value of Defendants' production homes is created by the location. TT 599:22-600:3; 617:6-11.

•Production builders do not compete based on floor plans but on location, construction quality, detailing, upgrades, and exterior. TT 604:24-605:21; 618:4-23.

•The sales price of Defendants' homes was determined by location and square footage – not floor plan layout. TT 637:21-645:8; 652:15-653:23. Defendants sold non-accused homes with similar square footage and location for the same price as the accused homes, making the same profit regardless of floor plan. *Id.* Defendants sold the accused plans for different prices in different locations. *Id.*

•If there is profit related to the use of a floor plan, it can be determined by a cost approach whereby the profit margin used by Defendants is multiplied by the cost of the plan. TT 655:11-18; 1076:1-1077:6.

•Defendants paid Creative Residential Design for the accused plans. TT 616:4-16; 634:18-635:22.

•The price of Plaintiff's stock plans was determined based on square footage – without regard to the floor plan layout or design. TT 495:12-19.

•Stock floor plans could be licensed for less than $1,000 and typically included multi-use discounts. TT 603:23-604:23.

On the evidence presented, the Jury ultimately found that the accused homes infringed and awarded Plaintiff damages of $127,760. The Jury did not award any profits attributable to infringement that were not already accounted for in the award of actual damages. The Jury's verdict form read:

12.   If you find that one or more Defendants have infringed Plaintiff's copyright, what amount of actual damages do you find Plaintiff has suffered as a result?

$ _127,760.00_

13.   If you find that one or more Defendants have infringed Plaintiff's copyright, what are the profits of each Defendant that you find attributable to the infringement?

| | |
|---|---|
| As to DOUGLAS E. TURNER | $ _0_ |
| As to FREDERICK E. TURNER | $ _0_ |
| As to TURNER HERITAGE HOMES, INC. | $ _0_ |
| As to SUMMERBROOK HOMES, INC. | $ _0_ |
| As to GREENFIELD HOMES, INC. | $ _0_ |
| As to EMERALD HOMES, INC. | $ _0_ |
| As to WAKULLA BUILDERS, INC. | $ _0_ |
| As to WAKULLA BUILDERS, LLC | $ _0_ |
| As to CREEKSIDE HOMES, INC. | $ _0_ |
| As to TURNER HERITAGE HOMES OF DESTIN, LLC | $ _0_ |
| As to NORTHSIDE HOMES, LLC | $ _0_ |
| As to ASHTON BUILDERS, LLC | $ _0_ |
| As to FREEPORT BUILDERS, LLC | $ _0_ |
| As to SOUTH COUNTY HOMES, LLC | $ _0_ |
| As to VISION COAST HOMES, LLC | $ _0_ |
| As to EASTON BUILDERS, INC. | $ _0_ |

Notably, Plaintiff did not seek a special interrogatory regarding the Jury's calculations or the components, including any amounts that constitute profits of the Defendants, which make up the award of actual damages.

## V.    ARGUMENT

### A.    Plaintiff did not preserve the issue of Defendants' profits.

Plaintiff's Motion purports to seek judgment as a matter of law pursuant to Rule 50(b). *See* Plaintiff's Motion, p. 5. Rule 50(b) provides a procedural vehicle for parties to "file a renewed motion for judgment as a matter of law" on those issues raised in a Rule 50(a) Motion. In particular,

Rule 50(a)(2) provides that a "motion for judgment as a matter of law may be made at any time before the case is submitted to the jury" and that the motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Federal Rule of Civil Procedure 50(a)(2). Here, Plaintiff did not seek judgment as a matter of law on the issue of Defendants' profits generally, or distributions specifically, prior to the submission of the case to the Jury. Therefore, there is nothing to renew. Plaintiff limited its pre-verdict motion to whether it had established the threshold causal connection required for the Jury to consider profits and certain liability issues, but Plaintiff never sought judgment regarding whether any particular profits were attributable to infringement, what the specific profits should be, or whether the actual damages requested could be found to account for any profits. TT 1443:8-1444:1. Having failed to present the specific facts and law relied on (or even raise the issue of distributions as profits) prior to the verdict, Plaintiff is not entitled to seek judgment on the issue now. *See Mannion v. Coors Brewing Co.*, 530 F. Supp. 2d 543, 550 (S.D.N.Y. 2008)(finding the plaintiff failed to preserve the issue of whether "the evidence was insufficient to permit a jury to find that any actual damages that he sustained were included also in any infringer's profits that might be awarded."). Moreover, since the issues presented in Plaintiff's Motion were not raised by Plaintiff at any time prior to the instant motion, it is axiomatic that Plaintiff's Motion cannot be considered supplemental briefing of any Rule 50(a) motion.

**B.    The Jury's award is supported by a legally sufficient evidentiary basis.**

Plaintiff's Motion is premised on improper assumptions and disregard for evidence that supports the Jury's damage award. Plaintiff assumes, without foundation, that the Jury disregarded evidence of certain distributions to the individual Defendants. Plaintiff assumes, contrary to law, that the Jury disregarded the jury instructions. Plaintiff assumes, against the evidence, that the Jury must have found the distributions were causally connected and attributable to infringement. Each of these assumptions, necessary to Plaintiff's position, does not hold up under the law and evidentiary

record.

Copyright law allows a copyright owner to recover (i) "actual damages" and (ii) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages." 17 U.S.C. § 504(b). Inherent in the plain language of the statute are two threshold *factual* findings necessary to award profits of the infringer under the second measure of damages. *See Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 190 (5th Cir. 1988) (the question of allocating an infringer's profits between the infringement and other factors is "highly fact-specific," and should be left to the jury). First, the infringer's profits must be attributable to the infringement. Second, the profits of the infringer must not have already been accounted for in computing actual damages. Moreover, before the Jury was even able to consider the distributions, Plaintiff had the burden of establishing a causal connection between the alleged profits and the infringement. *See* Jury Instructions. Dkt. 412, pp. 33-35.

The agreed verdict form did not seek to have the Jury specify how its award was calculated or the specific nature of the infringement upon which it was based. This was no doubt a tactical decision by Plaintiff believing it would receive a larger award without any way to dissect the specific copyrightable elements found infringed, or the later ability to attach value to the infringement as opposed to other factors such as non-protectable elements of the accused plan, land, market conditions, construction quality, or material and finish upgrades. Having consented to the verdict form, Plaintiff cannot complain now, nor can it merely insert its own assumptions over a reasonable basis that is consistent with the verdict and supported by the evidence.

There are several reasonable scenarios, each supported by the evidence, which account for the Jury's decision to award actual damages but not find there to be additional profits attributable to infringement. The Jury may have found that Plaintiff failed to establish a causal connection between the distributions and infringement, or that the distributions were not attributable to the

infringement–and therefore determined that profits were not available. *See Bonner v. Dawson*, 2004 U.S. Dist. LEXIS 18498, *7 (W.D. Va. March 9, 2004). In *Bonner*, the jury awarded damages of $10,707.00 for copyright infringement of an architectural work created by the plaintiff. The plaintiff filed a motion under Rule 50(b) seeking profits. *Id.* at *1-2. The court found that the plaintiff had submitted evidence that the defendants built and leased the accused building; however, the court also found that the defendants had presented evidence that the leases would have been obtained even if a non-infringing design had been used. *Id.* at *6. The court denied the plaintiff's Rule 50 motion, reasoning "it is clear that the jury could reasonably determine either that plaintiff failed to show a causal connection between the infringement and any of defendants' gross revenues or, alternatively, that defendants satisfied their burden to show that none of their gross revenues were derived from the infringement. *Id.* Either way, the Jury's verdict is supported by substantial evidence and plaintiff's Rule 50(b) motion will be denied." *Id.* at *7.

Similarly, in *Mannion*, the plaintiff in a copyright infringement action sought judgment as a matter law on the issue of damages following trial. 530 F. Supp. 2d at 548. The Jury found infringement of the plaintiff's copyright in a photograph used in advertising, and awarded the plaintiff actual damages of $30,000, but no additional profits. *Id.* The court found that the jury was entitled to assess the significance of the infringing image to the advertisement in which it was used, and determine the use did not result in any of the revenues to the defendant. *Id.* at 551. The Court further found that savings from an actual payment of less than the amount plaintiff would have charged (i.e. saved acquisition costs) could be considered profit attributable to the infringement. *Id.* at 554. Finally, the court declined to grant a new trial on damages reasoning the plaintiff's objection to the verdict was merely a dispute about something concerning which reasonable persons might disagree. *Id.*

1. **The evidence is sufficient to support a finding that any distributions were not caused by, or attributable to, infringement.**

The Jury was presented substantial evidence that Defendants' profits (and thus any distributions) were not causally connected to, or attributable to, infringement of the HDS-2089. Plaintiff's motion relies entirely on an accounting principle briefly discussed by Dr. Fishkind called return on equity; however, when Dr. Fishkind discusses return on equity–the financial component Plaintiff calls individual profit–it was only in the context of what was expected in "a normal operating market" and only after he had determined that no profit had been made by Defendants from the accused homes. TT 1094:14-19. As the evidence showed, the period during which the accused homes were built was not a "normal operating market" and Dr. Fishkind testified that no profits were made from the sales of the accused homes that could be distributed. TT 1104:2-14. Dr. Fishkind explained that while a return on equity would be expected by investors, there were no profits from which a return on equity could be deducted. *Id.* Dr. Fiskind showed the Jury that regardless of whether the return on equity amount is considered, the profits are still in the negative. *Id.* According to Dr. Fishkind, this meant:

> the company consumed its own capital, **couldn't pay its owners any return and had no return left**, and so they are not in business. It's tragic, but that happened to a lot of small and medium size regional homebuilding companies during this period of time.

*Id.* (emphasis added). The Jury was thus provided an economic theory in which there was <u>no</u> return on equity from the accused homes. The Jury was able to determine that any distributions were unrelated to the accused homes–i.e. they were credited to land or other business of the corporate Defendants. Under these circumstances, and without any evidence suggesting that the Jury intentionally disregarded its duty to apportion profits, it cannot be found that the Jury's award is contrary to the evidence. *See 3M v. Pribyl*, 259 F.3d 587, 600 (7th Cir. 2001) ("absent evidence to the contrary, we assume that juries follow a court's instructions."). The Jury was free to consider Dr.

Fishkind's testimony that the distributions were ultimately not a result of sales of the accused homes, as there was no profit from the accused homes to fund those distributions. *Id.*[3]

Plaintiff mistakenly relies only on evidence that (i) distributions were made, and (ii) that a ratio of total sales to accused sales could hypothetically be applied to apportion the distributions to accused homes. Plaintiff's Motion, p. 2. However, even if it is accepted that the individual Defendants received distributions–a fact Defendants dispute because the distributions were merely an accounting function and ultimately used to secure credit lines for land purchases–they were necessarily related to profit from land.[4] Ultimately, there was no profit to attribute to return on equity and it resulted in a hypothetical accounting exercise. The Jury was therefore correct in not awarding Plaintiff profit that did not exist. After deducting expenses (but not distributions) from revenue generated by the sale of accused homes, at best only $1.4 Million remained as the net profit. TT 1102:7-24. It is mathematically impossible to attribute more than $2.6 Million of the distributions to the sale of accused homes, as Plaintiff seeks to have this Court do, where the evidence shows the net profit from the accused homes was only $1.4 Million before deductions.

Plaintiff also fails to account for the significant evidence that any profit made was attributable to land value and market conditions. TT 1103:5-1104:1; 653:22-644:24; 604:24-605:21; 618:4-23; 637:21-645:8; 652:15-653:23. Based on the evidence presented, Dr. Fishkind opined that:

> The margins on the vertical got squeezed, and **so the profit was really made because of the appreciation of the land component.**

TT 1103:5-1104:1 (emphasis added). The Jury was able to weigh the credibility of Dr. Fiskind and

---

[3] Plaintiff retained an expert in this case to rebut Dr. Fishkind's opinions; however, HDS decided as part of its trial strategy not to call that expert witness or offer rebuttal testimony.
[4] The financial records indicated that the distributions to the individual Defendants were required by lenders providing credit lines to be used to purchase CDs to secure the lines used for land. TT 716:4-717:3. When the land became valueless, the CD's were taken by the banks. *Id.* While the Court questioned whether the use of the distribution could affect the categorization of the distribution as profit, the use does at the very least evidence the fact that the distributions were related to land.

Doug Turner, and credit their unrebutted testimony in determining that any profit was attributable to land value and market conditions. Plaintiff's own counsel, Mr. Parrish, told the Jury in closing that Dr. Fishkind deducted profits attributable to land and directed them "you have the discretion to do that." TT 1372:3. Having told the Jury it is within their discretion to attribute profits to the land (calculated to be $1.7 Million by Dr. Fishkind, TT 1092:17), Plaintiff cannot complain that a verdict consistent with Plaintiff's argument was given. Plaintiff admits there was evidence that the corporate Defendants' made no profits from the sale of accused homes. Plaintiff's Motion, p. 2. From that evidence, the Jury was capable of determining that the distributions from those companies were not profits from the accused homes. The fact that distributions were made does not in any way require the distributions be attributable to the infringing activity.

        2.       **There evidence is sufficient to support a finding that any profits were accounted for in the award of actual damages.**

In presenting its interpretation of the Jury's verdict, Plaintiff assumes none of Defendants' profits were awarded; however, the facts and law provided to the Jury do not support this conclusion. The Jury was instructed that it was not to award any profits of the Defendants it accounted for in awarding actual damages. Thus, the award may very well account for any profits the Jury found attributable to infringement. In *Mannion*, the jury awarded the plaintiff actual damages of $30,000, but no additional profits. 530 F. Supp. 2d at 554. The Court found that in determining actual damages it was proper to consider savings from the actual cost of the infringing work, less than the amount plaintiff would have charged, to be profit attributable to the infringement. *Id.* at 554.

Here, there was ample evidence that would support a finding that the only profit attributable to the infringement was the saved acquisition costs-the savings from not having to purchase rights to the asserted work. This flows from the unquestionably commonplace and fungible nature of the plans, and the fact that a plan need only be commercially acceptable to obtain the same value as any

similar sized home, built in the same location, and using the same materials. TT 604:24-605:21, 618:4-23180:4-9, 281:6-15, 749:3-756:15, 760:13-761:18, 762:22-763:25, 766:16-767:20, 778:3-7, 1173:14-22, and 1174:21-25. Plaintiff priced its plans based on square footage – not design or layout. TT 495:12-19. The Jury was also presented evidence that the price of Defendants' homes was determined by location and square footage – not design or layout. TT 637:21-645:8; 652:15-653:23. Defendants sold non-accused homes with similar square footage and location for the same price as the accused homes, making the same profit regardless of floor plan. *Id.* Defendants sold the accused homes for different prices in different locations. *Id.* At most, HDS could claim that any infringement hypothetically resulted in saved acquisition costs and thus profit; however, this would amount to the established market price of the plan already recoverable as actual damages. On this evidence, the profit attributable to the alleged infringement is the same amount that Plaintiff would have charged for the floor plan, i.e., the saved acquisition costs ($127,760). These are the profits the Jury likely found were earned by Defendants in not having to pay license fees. However, since they are taken into account in determining actual damages, the Jury was correct to not provide a double recovery to Plaintiff as instructed by the Court. Even if we cannot know for certain which pieces of evidence the Jury relied on in making each of its calculations, the instructions were proper as a matter of law and we must assume that the Jury followed them. *See McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 569 (7th Cir. Ind. 2003).

The Jury was also presented evidence regarding a cost approach to determining profits attributable to necessary components of home construction and sales. Dr. Fishkind testified that a builder typically expects to make a 20% gross profit from the sale of a production home. TT 1107:11-1108:4. In the instant case, the Jury may have determined a price per plan and added 20% to that price to arrive at an amount that accounted for both license fees and Defendants' profits. In doing so, it would have been improper for the Jury to award an additional profit amount having

already calculated the profits attributable to the use of the plan. This model also accounts for the wide variation in sales prices for the same home. Dr. Fishkind explained the cost approach to the Jury as follows:

> Q. And can you explain generally what you mean when we say "cost plus"?
> A. Sure. You take the cost of an input -- nails, lumber -- and you think what your normal profit margin, and you apply it against all of the inputs into the house, and you hope at the end of the day the price you end up with is a price that somebody is going to buy the house for, and that way you can test whether you're going to make some money on selling the house.
> Q. And considering -- in light of that explanation, is that -- are you able to use that methodology as a check against your analysis of the value of the HDS-2089?
> A. Yeah. Sure.
> Q. And can you explain how you do that?
> A. Sure. In the building business, you generally are making margins of 12 percent on vertical construction, but you don't aim for 12 'cause you'll never reach 12, if you shoot for 12, so you always shoot for like 20. So you would mark up the $100 or the $300, depending upon the basis of the price you purchased the plans, you would mark it up by that 20 percent, just like you'd mark up the nails and the lumber and the roofing and the appliances, and everything else that goes into the house.
> Q. So, if the cost of a plan were a thousand dollars, under that theory, can you calculate the profits that a homebuilder would expect to receive based on that thousand-dollar plan?
> A. $200.
> Q. If they expect a 20 percent return?
> A. That's right.
> Q. Is that a reasonable number to expect, 20 percent?
> A. Yes.

TT 1076:1-1077:6.

### 3. Damages under 504(b) may not be punitive.

Unable to articulate a basis under the law for increasing the award of damages by the Jury, Plaintiff improperly requests that damages be added as punishment or deterrent. First, Nimmer explains that "'there is no basis in the law for requiring the infringer to give up more than his gain when it exceeds the copyright owners' loss. Such a requirement would add a punitive as distinct from a restitutionary element to copyright damages, and . . . the statute contains no provision for punitive damages.' The cases are clear that exemplary or punitive damages should not be awarded in a statutory copyright infringement action." 4-14 Nimmer on Copyright, §14.02 (quoting Judge

Posner, citation omitted). Second, the Eleventh Circuit and Section 504(c)(1) and (2) of the Copyright Act make it clear that "deterrent" damages, not punitive damages, are only available when statutory damage awards are at issue as opposed to actual damage awards. *See St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1205-1206 (11th Cir. 2009) (discussing copyright damages and stating "in the copyright context, the Supreme Court has explained that deterrence is a proper consideration in a *statutory damages* award in order to achieve the statute's goals") (emphasis added). Because neither punitive nor statutory damages are available to Plaintiff in this case, Plaintiffs argument for deterrent damages should be rejected. As the court in *Mannion* recognized, an award of actual damages is not always satisfying where the nature of the infringement is willful; however, Congress provided for such instances by providing for statutory damages, presuming the plaintiff has taken the necessary action to preserve the right to seek them. 530 F. Supp. 2d at 554. Here, Plaintiff was already awarded seven times the license fee typically charged to multi-use production builders such as Defendants ($103, TT 1074:1-14), eliminating any incentive to infringe. Moreover, the commonplace nature of Plaintiff's work does not warrant provision of an even greater windfall to Plaintiff.

### C. The Defendants should not be held jointly and severally liable for any additional amounts awarded as profits.

Although two or more Defendants may be found jointly and severally liable for a plaintiff's actual damages if they participate in the same act of infringement, "each defendant is only liable to the copyright plaintiff to the extent of its own profits derived from the infringing activity." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 517 (4th Cir. 2002); *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1981) ("Insofar as there is liability for illegal profit, the liability is several; one defendant is not liable for the profit made by another"). The Fourth and Ninth Circuits have recognized an exception to this rule if the Defendants were operating as "practical partners," but there is no case in the Eleventh Circuit adopting this exception. *See Nelson-Salabe*s, 284 F.3d at 517;

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985). The *Nelson-Salabes* Court remanded for determination on the factual question of whether the parent company was a "practical partner" with a subsidiary and its employee, and to consider such factors as whether the parent was actually participating and receiving profits as a partner in the venture, or simply receiving a fixed percentage fee or royalty for its participation. *Id.* Important to the decision in Nelson was that "partners" were only found to be jointly and severally liable "for any profits that they **collectively** derived from the acts of copyright infringement." *See Nelson-Salabes*, 284 F.3d at 517 (emphasis added). This is critical in that it appears the application of this exception is limited to instances where the "partners" each had access to a cumulative pot of profits. *See id.*; *see also FSC Franchise Co., LLC v. Express Corporate Apparel, LLC*, 2011 U.S. Dist. LEXIS 34064, *22-23 (M.D. Fla. Feb. 28, 2011) (joint and several liability in trademark case where company was closely held by single individual who was engaging in the infringing conduct). Here, it would not be equitable to hold the Defendants jointly and severally liable where the amount sought by Plaintiffs was not collectively derived or controlled by Defendants.

> **D.    A new trial on damages is not warranted or proper.**

Plaintiff shows the same disregard for evidence presented to the Jury discussed above to argue for a new trial. Plaintiff claims the award of "zero profits is contrary to the great weight of the evidence." Plaintiff's Motion, p. 8. In making this demonstrably false assertion, Plaintiff relies on its conclusion that the record does not contain any evidence that might attribute profits to any factor other than infringement. *Id.* First, as shown above, the evidence is consistent with a finding that the Jury did award profits; they were simply accounted for in the award of actual damages. Second, as detailed above, there was extensive evidence that any profit from the sale of accused home was attributable to land value and market conditions. TT 1103:5-1104:1; 653:22-644:24; 604:24-605:21; 618:4-23; 637:21-645:8; 652:15-653:23. Based on the evidence presented, Dr. Fishkind opined that:

The margins on the vertical got squeezed, and so the profit was really made because of the appreciation of the land component.

TT 1103:5-1104:1. In particular, Dr. Fishkind testified:

> Q. And based on those numbers, what did you calculate the profit attributable to the land itself?
> A. $1,720,327.

TT1092:15-17. The Jury was able to weigh the credibility of Dr. Fiskind and Doug Turner, and credit their unrebutted testimony in determining that any profit on the accused homes was attributable to land value and market conditions. Moreover, Plaintiff's own counsel, Mr. Parrish, told the Jury in closing that Dr. Fishkind deducted profits attributable to land and directed them "you have the discretion to do that." TT 1372:3. The Jury was permitted to credit Dr. Fishkind's testimony and disregard the attorney argument of Plaintiff's counsel. Rule 59 is not intended as a means to give unhappy litigants a second chance to convince a new Jury that its version of disputed evidence is correct. The Jury's award was consistent with the law and not against the great weight of the evidence. *See Lipphardt*, 267 F.3d at 1186 (reversing order granting a new trial and reasoning that the evidence found credible by the jury was consistent with the law).

A court may not grant a *partial* new trial "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Seb S.A.*, 148 Fed. Appx. at 796-797; *Gasoline Prods.*, 283 U.S. at 500. In this case, the profits sought by Plaintiff must be caused by, and attributable to, copyright infringement. Accordingly, the determination of damages is interwoven with the determination of infringement. The Jury may have found but one *de minimus* portion of the asserted work was original and copied. The damages flowing from such limited use would necessarily be different than in a case where a work is found to be unique and extensively copied. Since there is no means by which to inform a new Jury of the protectable elements of the HDS-2089 found to be infringed, a partial trial on damages would not be possible or equitable.

## VI.    CONCLUSION

Plaintiff never sought judgment as a matter of law on the issue of whether distributions to individual Defendants were profits attributable to infringement. As such Plaintiff's Motion must be denied because the issue presented was not preserved. Should the Court consider Plaintiff's Motion, it must still fail because a sufficient evidentiary basis is readily found in the trial record to support the Jury's damage award, assuming infringement. The record is replete with evidence that any profits from the accused homes were not distributed to the individuals, were not cause by an infringement, and were not attributable to any infringement. In addition, the evidence supports a finding that any actual damages found would necessarily include profits attributable to infringement in the form of saved acquisition costs or as calculated under a cost approach. The Court should also deny Plaintiff's request for a new trial on damages because the great weight of the evidence does not establish any error in the Jury's calculations. Rather, Plaintiff simply wants to present issues on which reasonable persons might disagree to a new set of persons. Additionally, the issue of profits attributable to infringement in the context of a copyright action is so intertwined with liability issues that a partial trial cannot be fairly had. Defendants therefore request that Plaintiff's Motion be denied.

Respectfully submitted this May 19, 2014.

/s/ Jeffrey S. Boyles
Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@addmg.com
Jeffrey S. Boyles
Florida Bar No. 722308
jboyles@addmg.com
Ryan T. Santurri
Florida Bar No. 0015698
rsanturri@addmg.com
ALLEN, DYER, DOPPELT, MILBRATH &
GILCHRIST, P.A.
255 S. Orange Ave., Suite 1401
Orlando, Florida 32801
407-841-2330 – Telephone
407-841-2343 – Facsimile

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2014, the foregoing was submitted for filing to the Clerk of the District Court by using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a Notice of Electronic Filing to the following CM/ECF participants:

Jon D. Parrish, Esquire
Kirt R. Posthuma, Esquire
Parrish, Lawhon & Yarnell, P.A.
3431 Pine Ridge Road, Suite 101
Naples, Florida 34109
Telephone:  239-566-2013
Facsimile:  239-566-9561

/s/ Jeffrey S. Boyles
Jeffrey S. Boyles